CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 0 1 2016

JULIA C. DUDLEY, CLERK
BY:
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEON FERGUSON-EL,<br>    Plaintiff, | Civil Action No. 7:16-cv-00120 |
| v. | **MEMORANDUM OPINION** |
| J. HORTON, et al.,<br>    Defendants. | By:   Hon. Michael F. Urbanski<br>       United States District Judge |

Leon Ferguson-El, a Virginia inmate proceeding pro se, filed a complaint pursuant to 42 U.S.C. § 1983. Plaintiff names three staff of the River North Correctional Center as defendants: J. Horton and Burnette, who are Institutional Investigators, and T. Dowell, an Institutional Program Manager. Plaintiff argues that Defendants violated the First Amendment of the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), et seq. Defendants filed a motion for summary judgment, to which Plaintiff responded, making the matter ripe for disposition. After reviewing the record, the court grants Defendants' motion for summary judgment.

I.

On February 25, 2015, Plaintiff printed a "commercial writ of habeas corpus" from his prison law library account to challenge a state court criminal conviction. Staff discovered the document and associated it with the prison security threat group "Sovereign Citizens," whose adherents believe that they do not have to recognize federal, state, or local laws, policies, or regulations because governments in the United States operate beyond their legal jurisdiction. Staff confiscated and forwarded the document to an institutional investigator, who determined

that it was related to Sovereign Citizens. Defendant Dowell avers that she did not personally confiscate the commercial writ of habeas corpus.[1]

On May 29, 2015, defendant Horton was informed that Plaintiff was telling inmates during a meeting for Moorish Science Temple of America ("MSTA") adherents to "buck the system" and that "the government, police, and other authorities had no jurisdictional authority or control over them." Staff asked Horton to speak with Plaintiff about the statements because they were similar to Sovereign Citizen ideology.

Plaintiff alleges he told the attending MSTA adherents that the MTSA's Koran says, "[T]hy equals have agreed to raise to sovereign power and set as a ruler over themselves." Plaintiff also allegedly said MSTA adherents should respect the American flag as a flag of a sovereign nation and "that we Moors have an independent sovereign nation with our own flag, which is the Red flag with a five pointed green star in the center in which two distinct jurisdiction[s] exist within this country."

Horton informed Plaintiff during the religious meeting that staff considered Plaintiff to be a Sovereign Citizen and that he would be charged with inciting a demonstration and placed into segregation if he did not cease from teaching Sovereign Citizen ideology to MSTA attendees. Plaintiff denied to defendants that he made such statements. Plaintiff was allowed to return to the service, he continued his religious teaching, and he did not mention Sovereign Citizen ideology again. However, Plaintiff now fears being charged and placed in segregation whenever he preaches about MSTA sovereignty.

---

[1] Defendants report that Plaintiff received institutional infractions and had his law library privileges suspended since filing this action, but they note that Plaintiff can request material from the law library. Plaintiff has not sought to supplement the complaint with claims related to the infractions or law library access.

2

Horton avers he did not instruct Plaintiff to not teach MSTA or other religious beliefs. Rather, Horton instructed Plaintiff to not teach Sovereign Citizen ideology by instructing offenders to "buck the system" or disregard prison rules or staff.[2] Horton notes that the VDOC classifies Plaintiff as a Sovereign Citizen because of the number of times he has been caught with material related to Sovereign Citizen ideology.

Plaintiff claims that Horton and Burnette suppressed his right to practice his religion in violation of the First Amendment and RLUIPA. Plaintiff also claims that Dowell denied him access to the courts and censored his legal materials in violation of the First Amendment.

## II.

Defendants filed a motion for summary judgment, arguing that they are entitled to qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

A party is entitled to summary judgment if the pleadings, disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most

---

[2] Notably, Plaintiff does not aver that he did not make those statements.

3

favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

### III.

Inmates have a constitutional right to reasonable access to courts to challenge their convictions or vindicate their constitutional rights. See Bounds v. Smith, 430 U.S. 817, 838 (1977). The right of reasonable access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Accordingly, in order to plead a backward looking denial of reasonable access to courts claim, a plaintiff must specifically identify a non-frivolous legal claim that a defendant's actions prevented him from litigating. Id. at 415-16; Lewis v. Casey, 518 U.S. 343, 353 n.3 (1996). This requirement means the "inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his

4

instigation or prosecution of legal actions. . . . The fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim." Godfrey v. Washington Cnty., Va., Sheriff, No. 7:06-cv-00187, 2007 U.S. Dist. LEXIS 60519, at *39, 2007 WL 2405728, at *13 (W.D. Va. Aug. 17, 2007) (Turk, J.) (citing Lewis, 518 U.S. at 351).

Plaintiff fails to establish that his "commercial writ of habeas corpus" was not frivolous or passed the various gate-keeping mechanisms under Virginia law for a petition for a writ of habeas corpus. See, e.g., Va. Code § 8.01-654. Plaintiff asserts that his "commercial writ of habeas corpus" was valid and not frivolous because it cited Virginia's implementation of the Uniform Commercial Code, Virginia Code § 8.1A-308, but invoking that statute only bolsters the finding Plaintiff pursued a frivolous legal claim and was invoking the methods of the Sovereign Citizen movement. Indeed, Plaintiff's other filings with federal courts further bolster that perspective. See, e.g., Ferguson-El v. United States, No. 12-0507, 2012 U.S. Dist. LEXIS 46383, at *1 (E.D. Va. Mar. 30, 2012); Ferguson-El v. Virginia, No. 3:10cv577, 2011 U.S. Dist. LEXIS 92557, at *1 (E.D. Va. Aug. 18, 2011); Notice of Intent to File Bankruptcy at 1-7, In re: Leon Pat Ferguson, No. 1:11-bk-15539 (Bankr. E.D. Va. Aug. 4, 2011); Complaint at 1-6, Ferguson vs. Unknown, No. 3:08-cv-00285 (E.D. Va. Aug. 14, 2008); see also In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008) (collecting cases indicating that federal courts may take judicial notice of governmental websites, including court records). Accordingly, Dowell is entitled to qualified immunity and summary judgment for the access to courts claim.

5

## IV.

Plaintiff argues that Horton and Burnette violated the First Amendment and RLUIPA by threatening him with segregation for discussing the sovereignty of MTSA adherents. Inmates "clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, inmates' First Amendment rights must be balanced with prisons' institutional needs of security, discipline, and general administration. Id. at 349. Thus, "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

Id. at 200 (citing Turner, 482 U.S. at 89-92). The prisoner has the burden to disprove the validity of a prison regulation per Turner. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

RLUIPA has a more taxing standard for the government to satisfy than the First Amendment. See, e.g., Van Wyhe v. Reisch, 581 F.3d 639, 657-58 (8th Cir. 2009) (noting that if an inmate's claim fails under RLUIPA, it also fails under the First Amendment). RLUIPA, in relevant part, provides that no government shall impose a substantial burden on the religious

6

exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest.[3] 42 U.S.C. § 2000cc-1(a). A "substantial burden" on religious exercise occurs if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." Lovelace, 472 F.3d at 187 (internal quotations omitted). If a plaintiff produces prima facie evidence of a government's substantial burden on a sincerely-held religious exercise, the government must prove that the burden is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b). Due deference must be given "to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (citation omitted). Security concerns deserve "particular sensitivity." Id. at 722.

The court finds that Horton and Burnette did not deprive Plaintiff of rights protected by the First Amendment and RLUIPA. First, Plaintiff has not presented any argument to disprove the validity of any regulation under the Turner framework. Instead, Plaintiff relies on his mere labels and conclusions, which are not entitled to an assumption of truth, to allege a violation of the First Amendment. See, e.g., Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

---

[3] "Government" includes the defendants, who work for the VDOC. See 42 U.S.C. § 2000cc-5(4)(A). For purposes of summary judgment, the court assumes Plaintiff has a sincerely-held religious need to preach to MSTA adherents. See, e.g., United States v. Seeger, 380 U.S. 163, 185 (1965).

7

Furthermore, Horton and Burnette establish that their warning about teaching Sovereign Citizen ideology during the MSTA meeting is the least restrictive means of furthering a compelling government interest and is reasonably related to a legitimate penological interest. Notably, Plaintiff has not disputed for purposes of summary judgment that he identifies with Sovereign Citizen ideology, said inmates should "buck the system," and said that government officials "had no jurisdictional authority or control over them."

The VDOC bans Sovereign Citizen ideology and materials in its prisons because Sovereign Citizens are an anti-government group recognized as a security threat group, which is an opinion given its due deference. See, e.g., Colar v. Heyns, No. 1:12-cv-1269, 2013 U.S. Dist. LEXIS 4316, at *9-10 (W.D. Mich. Jan. 11, 2013) ("The 'sovereign citizen movement' is well documented. The Federal Bureau of Investigation has classified 'sovereign citizens' as domestic terror threats because they are anti-government extremists."); Folson-El Bey v. Wells Fargo Home Mortgage, No. 11-cv-13534, 2012 U.S. Dist. LEXIS 58365, at *3-5 (E.D. Mich. Apr. 26, 2012) (discussing the sovereign citizen movement); El Ameen Bey v. Stumpf, 825 F. Supp. 2d 537, 539-43 (D.N.J. 2011) (discussing the overlap between the MSTA and sovereign citizen movements). Horton and Burnette did not stop Plaintiff from teaching MSTA or prevent him from teaching about his religious beliefs. Instead, they told Plaintiff not to teach Sovereign Citizens ideology because it implicated the orderly working and security of the prison. By asking Plaintiff to refrain from teaching an security threat group's ideology but permitting him to continue teaching his religious beliefs, Horton and Burnette sought a legitimate and neutral government purpose to prevent dangerous ideology from being disseminated in the prison while still ensuring Plaintiff's ability to exercise his religion beliefs. To the extent Plaintiff must be

8

more careful with distinguishing his religious beliefs from Sovereign Citizens ideology, Plaintiff fails to establish how exercising such care pressures Plaintiff to abandon the precepts of his religion. See, e.g., Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007). Accordingly, Horton and Burnette and entitled to qualified immunity and summary judgment for the religious claims.

V.

For the foregoing reasons, the court grants Defendants' motion for summary judgment.

ENTER: This 30 day of November, 2016.

/s/ Michael F. Urbanski
United States District Judge